UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

**Jeffrey S. Sonnichsen**  Civil Action No. 09-578

versus  Judge Tucker L. Melançon

**Aries Marine Corp.**  Magistrate Judge Mildred E. Methvin

MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by plaintiff, Jeffrey S. Sonnichsen [Rec. Doc. 11] and a cross Motion for Summary Judgment filed by defendant Aries Marine Corporation [Rec. Doc. 13] and plaintiff's opposition thereto [Rec. Doc. 15]. For the following reasons, each of the motions will be denied in part and granted in part.

I. FACTUAL BACKGROUND

In March 2007, plaintiff was hired as a cook on offshore oil rigs for Aries Marine Corporation ("Aries Marine"). *R. 1, ¶5*. During his time of employment with Aries Marine, plaintiff was enrolled in an employee health benefits plan ("the Plan") administered by Aries Marine. The employee health benefits plan provided coverage to plaintiff for costs incurred as a result of medical treatment provided to him. *Id at ¶6*.

Following his last offshore shift from which he returned on October 2, 2008, plaintiff received significant medical treatment, including a lumbar surgery performed by Dr. Harry C. Weiser on October 13, 2008. *Id. at ¶¶ 7&8*. Due to the surgery and post-operative treatment, Dr. Weiser completed a return to work/restrictions form stating that plaintiff was totally disabled and would be unable to return to work for approximately twelve weeks, until January 6, 2009. *Id.* Plaintiff alleges

1

that on October 10, 2008, he called and informed Aries Marine of his pending surgery and restriction from work by Dr. Weiser and faxed the restrictions form to Aries Marine. *Id. at ¶9.* Plaintiff further alleges that he never resigned from his employment with Aries Marine. *Id.* Dr. Weiser performed surgery on plaintiff on October 13, 2008 and plaintiff received post-operative medical care thereafter. Plaintiff was released to return to work on or about January 6, 2009. *Id. at ¶ 10.*

Plaintiff received an election letter dated December 1, 2008 under the Comprehensive Omnibus Budget Reconciliation Act of 1985 (COBRA) entitled "Aries Marine Corporation Continuation Coverage Under the Group Health Plan ("COBRA Election Letter"). Plaintiff alleges in his Complaint that he received the COBRA election letter "on or about December 15, 2008." *Id. at ¶ 11.*[1] The COBRA Election Letter, notified plaintiff that he had been terminated by Aries Marine and that coverage under the employee health benefits plan would expire retroactively to October 3, 2008 if he did not elect to continue health care benefits under COBRA. *Id. at ¶ 11.* Attached to the COBRA Election Letter was a COBRA election form entitled "COBRA Continuation Coverage Election Form" on which plaintiff could make a selection to continue receiving health care benefits for himself for a premium of $367.44 per month. *Id. at ¶ 12.*

Plaintiff asserts that the COBRA election letter was the first notice that he was terminated on October 2, 2008, and the first notice of his COBRA election rights. *Id. at ¶ 13.* Plaintiff alleges that in November 2008, he received Explanations of Benefits ("EOBs") stating that his medical expenses were covered under the Plan. However in December 2008, he received EOBs stating that the Plan's coverage had terminated on October 2, 2008 and that coverage would not be provided to multiple

---

[1] Plaintiff states in his motion that "he did not receive his COBRA rights until after at least December 1, 2008." *R. 11, p. 11.*

health expenses during and after October 2008. *Id. at ¶ 14.* Plaintiff alleges that by the time he received the COBRA Election Letter and Election Form, he had not received any income in over two months to prepare him to pay the COBRA premium or take measures to secure other health care benefits coverage.

On or about February 26, 2009, plaintiff sent correspondence via certified mail to Group Resources, the Plan's Administrative Service Agent that provided the EOBs to plaintiff, in order to place Group Resources on notice that plaintiff was appealing the decision for the failure of Aries Marine to timely provide plaintiff with COBRA election rights. *Id. at ¶ 16.* Plaintiff alleges he has not received a response from the appeal. *Id*.

Plaintiff filed this action under ERISA, the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, alleging that Aries Marine violated the ERISA provision for continuation of coverage under 29 U.S.C. § 1161, *et seq.* and for failing to provide him with timely notice of the qualifying event, his termination, and of his COBRA rights. *Id. at ¶¶ 17-19.* Plaintiff alleges that Aries Marine is liable for all medical expenses incurred since October 2, 2008 that would have been covered under the Plan and for all general damages. *Id. at ¶¶ 21-25.* Plaintiff also contends that Aries Marine is liable for penalties and attorneys' fees. *Id. at ¶¶ 26-27.*

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id*. If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[2] *Id*. at 322-23.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.,* 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty*

---

[2] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

*Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson,* 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir. 1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56©; *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id*

### III. LAW & ANALYSIS

A.    COBRA NOTICE VIOLATION

COBRA was enacted "to provide employees with an opportunity to continue to receive group health insurance after the occurrence of a 'qualifying event.'" *Myers v. King's Daughters Clinic*, 912 F.Supp. 233, 237 (W.D.Tex.1996), *aff'd*, 96 F.3d 1445 (5th Cir.1996). Therefore, COBRA "require[s] an employer who sponsors a group health plan to give the plan's 'qualified beneficiaries' the opportunity to elect 'continuation coverage' under the plan when the beneficiaries might otherwise lose coverage upon the occurrence of certain 'qualifying events,' including the death of the covered employee, the termination of the covered employee's

5

employment (except in cases of gross misconduct), and divorce or legal separation from the covered employee." *Geissal v. Moore Medical Corp.*, 524 U.S. 74, 79-80 (1998) (citing 29 U.S.C. § 1163); *Degruise v. Sprint Corp.*, 279 F.3d 333, 336 (5th Cir.2002). "COBRA demands that the continuation coverage offered to qualified beneficiaries be identical to what the plan provides to plan beneficiaries who have not suffered a qualifying event." *Geissal*, 524 U.S. at 80 (quoting 29 U.S.C. § 1162(1)).

Significantly, "the statute requires plans to advise beneficiaries of their rights under COBRA both at the commencement of coverage and within 14 days of learning of a qualifying event." 29 U.S.C. § 1166(a); see *Degruise*, 279 F.3d at 336. Under § 1166(a)(2), an employer has a duty to report most qualifying events, including the termination of employment, to its group health plan administrator within 30 days of the qualifying event. The plan administrator must then notify the qualified beneficiary within 14 days of being notified of the qualifying event by the employer. 29 U.S.C. § 1166(c).[3] In the Fifth Circuit, "the law requires only that the employer make a good faith attempt to comply with COBRA's notification provision." *Degruise v. Sprint Corp.*, 279 F.3d 333, 337 (5th Cir.2003). While the statute itself does not specify what exactly

---

[3] When an employer is also the administrator of the health plan, several courts have construed 29 U.S.C. § 1166(a) & (c) to give the employer a total of 44 days in which to notify a terminated employee, regardless of when the administrator received notice of the employee's termination. See, e.g., Roberts v. Nat'l Health Corp., 963 F.Supp. 512, 515 (D.S.C.1997); 29 C.F.R. § 2590.606-4(b) provides in pertinent part:
> (2) In the case of a plan with respect to which an employer of a covered employee is also the administrator of the plan, ... the administrator shall furnish to each qualified beneficiary a notice meeting the requirements of paragraph (b)(4) of this section not later than 44 days after ... the date on which the qualifying event occurred.

will qualify as notice, numerous courts have held that mailing COBRA notification to an employee's last known address satisfies the notification provision. *Degruise*, 279 F.3d at 337. After notification, qualified beneficiaries have 60 days to elect continuation coverage. 29 U.S.C. § 1165(1). If a qualified beneficiary makes a COBRA election, continuation coverage dates from the qualifying event, and when the event is termination or reduced hours, the maximum period of coverage is generally 18 months. *Id*. § 1162(2)(A). "The beneficiary who makes the election must pay for what he gets, however, up to 102 percent of the "applicable premium" for the first 18 months of continuation coverage, and up to 150 percent thereafter." *Id*. § 1162(3). The "applicable premium" is usually the cost to the plan of providing continuation coverage, regardless of who usually pays for the insurance benefit. *Id*. § 1164.

There is no dispute that Aries Marine is the Plan Administrator for its employees. Furthermore, the parties agree that plaintiff's termination from Aries Marine was a qualifying event, that he was not terminated for "gross misconduct," and that he was entitled to COBRA benefits, if he elected to receive them. Therefore, Aries Marine was obligated to provide plaintiff with detailed written notice of the availability of COBRA benefits within 14 days of the October 2, 2008 termination, that is, by October 16, 2008. It is also undisputed that Aries Marine's initial COBRA notice to plaintiff was dated December 1, 2008.[4]

**B. COBRA PENALTIES**

---

[4] Even assuming 29 C.F.R. § 2590.606-4(b) applies, *supra,* and Aries Marine had 44 days, or until November 16, 2008, to notify plaintiff, the December 1, 2008 notice was late under the statute.

The Court has discretion to impose a penalty for COBRA notice violations. *See* 29 U.S.C. § 1132(c)(1); *Abraham v. Exxon Corp.*, 85 F.3d 1126, 1132 (5th Cir.1996). ERISA provides for a penalty of up to $110 per day for failure to meet COBRA notice requirements. The penalty provision serves as an incentive to plan administrators to meet requests for information in a timely fashion. *Davis v. Featherstone*, 97 F.3d 734 (4th Cir.1996). "In exercising its discretion to impose penalties for violation of notice requirements, the court should take into consideration the presence or absence of good faith on the employer's part in putting forth its defense." 60A Am.Jur.2d Pensions § 776 (*citing Mlsna v. Unitel Communications, Inc.*, 41 F.3d 1124 (7th Cir.1994); *Protocare of Metropolitan N.Y., Inc. v. Mutual Ass'n Administrators, Inc.*, 866 F.Supp. 757 (S.D.N.Y.1994); *Tucker v. General Motors Retirement Program*, 949 F.Supp. 47 (D.Mass.1996)); *Bartling v. Fruehauf Corp.*, 29 F.3d 1062 (6th Cir.1994); *Holford v. Exhibit Design Consultants*, 218 F.Supp.2d 901, 908 (W.D.Mich.2002).

"Prejudice to a plaintiff caused by an administrator's failure to supply information is also a significant factor for the court to consider in awarding penalties," 60A Am.Jur. 2d, Pensions § 776 (*citing Protocare of Metropolitan N.Y., Inc. v. Mutual Ass'n Administrators, Inc.,* 866 F.Supp. 757 (S.D.N.Y.1994); *First Atlantic Leasing Corp. v. Tracey*, 738 F.Supp. 863 (D.N.J.1990)), but a penalty can be imposed in the discretion of the court without a showing of actual prejudice or bad faith. *See Godwin v. Sun Life Assurance Co. Of Canada*, 980 F.2d 323, 327 (5th Cir.1992); 60A Am.Jur. 2d, Pensions § 776. "The whole intent of this discretion is, while avoiding Draconian justice, to construct a remedy which regards the violation with sufficient seriousness

that it will not be repeated." *Holford v. Exhibit Design Consultants,* 218 F.Supp.2d 901, 908 (W.D.Mich., September 09, 2002).

In support of his action for damages, plaintiff contends that he was "shocked" when he received the December 1 termination letter and that he was prejudiced after he acquired extensive medical treatment that he believed would be covered under the Plan. *R. 11*. The record reveals that the Plan requires an employee electing coverage to contribute to a portion of the health-care premium which contribution is deducted from the employee's gross pay. *Plan, pp. 23, 26*. Coverage under the Plan ends at midnight on the date on which a covered employee's employment with Aries Marine terminates. *Id. at p. 27*. Ceasing active work due to illness or injury is deemed termination under the Plan unless the employee contacts his supervisor or the Plan Administrator to make arrangement to continue medical coverage which coverage may be continued for up to three months, provided the employee makes the required premium contributions. *Id.*

The Court, on the basis of the entire record presented, finds that plaintiff has not shown entitlement to a penalty. There is no dispute that plaintiff never contacted Aries Marine after he ceased active work on October 2, 2008 to make arrangement to continue his coverage, nor did he pay any portion of the required employee premium contributions after October 2, 2008. The December 1, 2008 termination letter from Aries Marine expressly informed plaintiff of the opportunity to insure his medical expenses retroactively to the date he lost coverage, October 3, 2008. The letter explained that plaintiff could receive COBRA benefits by completing and returning by mail the enclosed election form before the deadline on January 30, 2009 or 60 days

from the date the COBRA notice was mailed to him. Plaintiff acknowledges he received the letter on December 15 and does not dispute that he was aware of this right by that time. Inexplicably, however, plaintiff did not choose to continue coverage. Thus, the Court finds plaintiff's allegations of prejudice unconvincing. Nowhere does plaintiff contend that he would have purchased coverage had he been properly notified under COBRA. *See, Roberts v. National Health Corp.*, 963 F.Supp. 512, 515 (D.S.C.1997) (Employer's delay in delivering the COBRA notice did not harm the employee, because, if the employee had chosen continuation coverage, the first premium would apply retroactively to provide continuous coverage from the date of the qualifying event).

**C. RECOVERY OF MEDICAL EXPENSES**

Plaintiff seeks recovery of "at least $30,158.80" in medical bills that he states were not covered by insurance due to Aries Marine's COBRA violation. Aries Marine maintains that the Court should deny plaintiff any award because he failed to mitigate his damages when he chose not to pay the premiums which would allow him to elect insurance coverage retroactively under COBRA. Aries Marine further asserts that the EOBs upon which plaintiff bases his claim for medical expenses are unauthenticated and are otherwise inadmissible hearsay and should be stricken from the record.

"Congress' purpose in enacting the ERISA disclosure provisions [was to] ensur[e] that the individual participant knows exactly where he stands with respect to the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989). Congress not only wanted employees to have

the option of continuous medical coverage; it also insisted that employees be fully informed of their options when their coverage ends. *See* 42 U.S.C. § 300bb-1(a), -6. When COBRA violations result in the loss of a qualified beneficiary's insurance coverage, courts have interpreted ERISA's civil enforcement statute as entitling the qualified beneficiary to compensatory damages in an amount equal to medical expenses minus deductibles and premiums that the beneficiary would have had to pay for COBRA coverage.[5] *See Miles-Hickman v. David Powers Homes, Inc.*, 589 F.Supp.2d 849, 882 (S.D.Tex.,2008)*; Fisher v. Trutech, Inc.*, 2006 WL 3791977, at *3 (M.D.Ga.2006); *Chenoweth v. Wal-Mart Stores, Inc.*, 159 F.Supp.2d 1032, 1042 (S.D.Ohio 2001); *Hamilton v. Mecca, Inc.*, 930 F.Supp. 1540, 1555 n. 24 (S.D.Ga.1996). The Court will grant plaintiff's motion seeking recovery of his medical expenses incurred from the date his benefits ended, October 3, 2008, through December 15, 2008, the date plaintiff finally received notification of his termination and right to elect COBRA benefits but failed to apply for COBRA. *Id.* To that end, the Court will require the parties to file a joint stipulation stating the amount of plaintiff's medical expenses minus the deductibles and premiums he would have paid for COBRA coverage from October 3 through December 15, 2008.

### D. RECOVERY OF ATTORNEY'S FEES

The Court in its discretion may award attorneys' fees to a plaintiff that prevails on an ERISA claim, including a claim of a COBRA violation. *See* 29 U.S.C. § 1132(g); *Wegner v.*

---

[5] The civil enforcement statute provides that "the court may in its discretion order such other relief as it deems proper." 29 U.S.C. § 1132(c)(3). Courts have interpreted "other relief" as an award of medical expenses minus deductibles and premiums.

*Standard Ins. Co.*, 129 F.3d 814, 820-821 (5th Cir.1997) (ERISA § 502(g), applicable both to trials and appeals, provides that "the court in its discretion may allow a reasonable attorney's fee and costs ... to either party."). Although the decision to award attorneys' fees is discretionary, the court should consider the following five factors in its analysis: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions." *Wegner* at 821.

The Court has not found that Aries Marine acted in bad faith in failing to timely provide plaintiff with the detailed post-termination COBRA notice and therefore factor 1 weighs against granting attorneys' fees. As to the second factor, however, it is axiomatic that Aries Marine is in a position far superior to plaintiff's in satisfying the amount of attorneys' fees incurred in this matter and weighs in favor of awarding attorneys' fees. In determining the third factor, the Court must consider whether or not the award would deter Aries Marine from similar action. While there is no evidence that Aries Marine has failed to provide timely notice to any other former employee, the record indicates that plaintiff informed Aries Marine on October 10th that he was about to undergo surgery and would be totally disabled for some time. Aries Marine failed to notify plaintiff of his COBRA rights until 50 days later. Thus, the award of attorneys' fees would

provide a deterrence of such action in favor of factor 3 and would also benefit other beneficiaries, weighing in favor of factor 4. Finally, as the Court has found that plaintiff's action has merit and that Aries Marine is in violation of COBRA's notice requirement, factor 5 weighs in favor of attorneys' fees. Thus, the Court finds that an award of attorneys' fees to plaintiff is appropriate in this case.

In an ERISA case, the determination of attorneys' fees requires the district court to apply a two-step analysis. The court must first determine whether the party is entitled to attorneys' fees by applying the five factors enumerated in Bowen. If the court concludes that the party is entitled to attorneys fees, it must then apply the loadstar calculation to determine the amount to be awarded. This calculation is accomplished by multiplying the number of hours expended on the matters at issue in the case by a reasonable hourly rate. *Wegner* at 822. Accordingly, the determination of attorneys' fees will be referred to the magistrate judge assigned to this action.

## V. CONCLUSION

For the foregoing reasons, the parties' cross motions for summary judgment will be denied in part and granted in part in that plaintiff's claims against Aries Marine for violation of the COBRA notice requirement, reimbursement of medical expenses and attorneys' fees will be GRANTED and Aries Marine's motion will be DENIED as to those claims, and Aries Marine's motion to dismiss plaintiff's claim for penalties will be GRANTED and plaintiff's claim will be DENIED.